UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRAXYS NORTH AMERICA LLC,<br><br>Plaintiff,<br><br> - against -<br><br>METAL PARTNERS REBAR, LLC, BGD LV HOLDING, LLC, INTERMETAL REBAR, L.L.C., JOSE CARRERO, JPMORGAN CHASE BANK N.A. and ADR REBAR, LLC, Defendants. | Case No.:  20-cv-02766 (JGK) |

**MEMORANDUM OF LAW
IN SUPPORT OF ORDER TO SHOW CAUSE
<u>FOR PRELIMINARY INJUNCTION WITH TEMPORARY RESTRAINING ORDER</u>**

*Of counsel:*

LENNON, MURPHY & PHILLIPS, LLC
Patrick F. Lennon
Kevin J. Lennon

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ……………………………………………....   5

BACKGROUND ………...…………………………………………………..   6

    The Parties …………………………………………………………....   7

    The Joint Venture Agreement …………………………………………   7

    The Joint Venture Settlement Agreement ……………………………..   11

    Events Subsequent to the Joint Venture Agreement …………………… 13

LEGAL ARGUMENT …………………………………………………………   15

I.    PLAINTIFF MEETS THE STANDARD FOR A
TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION …………………………………………..   15

    A.    Plaintiff Will Suffer Irreparable Harm as a Matter of Law
and Enjoining Defendants is in the Public Interest …………………   16

    B.    Plaintiff is Substantially Likely to Succeed on the Merits of
its Claims ………………………………………………………….   17

    C.    Alternatively, Plaintiff Has Shown Serious Questions to
Make a Fair Ground for Trial and the Balance of Hardships
is in its Favor ……………………………………………………….   25

CONCLUSION ..………………………………………………………………   26

CERTIFICATION OF COMPLIANCE ……………………………………….   27

## **TABLE OF AUTHORITIES**

### **Cases**

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
448 F.3d 573, 586 (2d Cir. 2006) ……………………………………    22, 23

*Colavito v. New York Organ Donor Network, Inc.,*
8 N.Y. 3d 43, 49-50 (2006) …………………………………………….    20

*Control Sys., Inc. v. Realized Sols., Inc.*, No. 11-cv-1423,
2011 U.S. Dist. LEXIS 108526 (D. Conn. Sept. 22, 2011) ………………..    17

*Espiritu Santo Holdings, LP v. Libero Partners, LP*,
2019 U.S. Dist. LEXIS 84844 (S.D.N.Y. May 14, 2019) ..…………………    15, 16

*Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*,
922 F. Supp. 2d 435, 444 (S.D.N.Y. 2013),
*aff'd*, 764 F.3d 210 (2d Cir. 2014) ………………………………………    17

*In re M.B. Int'l W.W.L.*, No. 12-cv-4945, 2012 U.S. Dist. LEXIS 110347
(S.D.N.Y. Aug. 6, 2012) ……………………………………………….    17

*Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) ………………………    22

*Marini v Lombardo*, 79 A.D.3d 932, 933,
912 N.Y.S.2d 693 (2nd Dep't 2010) ………………………………………    24

*McGrath v. Hilding*, 41 N.Y.2d 625, 629 (1977) ……………………………..    24

*Mei Yun Chen v. Mei Wan Kao*, 97 A.D.3d 730, 730, 948 N.Y.S.2d 426
(2nd Dep't 2012) ……………………………………………………….    24

*Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*,
312 F.3d 94, 96 (2d Cir. 2002) …………………………………………    15, 25

*Pappas v. Tzolis*, 20 N.Y.3d 228, 234 (2012) ……………………………….    20, 21

*Pivar v. Graduate Sch. of Figurative Art of the N.Y. Acad. of Art*,
290 A.D.2d 212, 212-13 (1st Dep't 2002) …………………………………    21

*Red Earth LLC v. United States*, 657 F.3d 138, 143 (2d Cir. 2011) …………    15

*Reuters Ltd. v. United Press Int'l, Inc.*,
903 F.2d 904, 909 (2d Cir. 1990) …………………………………………    25

*Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*,
754 F. Supp. 2d 616, 626 (S.D.N.Y. 2010) ……………………………….    17

*Schon Family Found. v. Brinkley Capital Ltd.*,
2018 N.Y. Misc. LEXIS 5609 (Sup. Ct. New York Co. 2018) ……………..    18, 19, 20

*Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 145 (2d Cir. 2003) ……………    15

*VisionChina Media Inc. v. S'holder Representative Servs., LLC*,
109 A.D.3d 49, 58, 967 N.Y.S.2d 338 (1st Dep't 2013) ………………………    18

**<u>Rules</u>**

Fed. R. Civ. P. 65 …………………………………………………………….    5

## PRELIMINARY STATEMENT

Plaintiff, Traxys North America LLC ("Plaintiff" or "Traxys") respectfully submits this Memorandum of Law in support of its order to show cause, filed pursuant to Fed. R. Civ. P. 65, for a preliminary injunction with temporary restraining order to enjoin and restrain defendants, Metal Partners Rebar LLC ("MPR"), BGD LV Holding, LLC ("BGD"), Intermetal Rebar, L.L.C. ("Intermetal"), Jose Carrero ("Carrero"), JPMorgan Chase Bank N.A. ("Chase") and ADR Rebar, LLC ("ADR")  (collectively "Defendants") as follows:

i)   barring Defendants from removing, moving, selling or otherwise disposing of the Traxys Inventory or Customer Funds;

ii)      directing the Defendants to provide an accounting of all Customer Funds received by the Defendants;

iii)      directing Defendants to immediately turn over all Customer Funds to Traxys;

iv)      directing Defendants MPR, BGD and Carrero to immediately grant Traxys full access to the Soule ERP software system and to provide all other books and records regarding the joint venture activity and disposition of the Traxys Inventory and Customer Funds;

v)      directing the Defendants MPR and Carrero to immediately grant access to the New Castle plant to facilitate the insurance investigation on the claim for missing rebar raw material inventory; and

vi)      directing the Defendants MPR, BGD and Carrero to immediately disclose all books and records concerning the raw material rebar inventory held at any location, including at the North Las Vegas and the New Castle plants.

## BACKGROUND

### The Parties

Plaintiff Traxys is a Delaware limited liability company, with an office in New York, New York and is in the business of, inter alia, sourcing, marketing and distributing metal commodities, including steel rebar products, and providing trade financing for such activities. *See Complaint ("Compl") at ¶¶ 3-4.*

Defendant MPR is an Illinois limited liability company, with an office in Tampa, Florida, and is in the business of fabricating, marketing and distributing steel rebar products to the construction trade. *See Compl. at ¶¶ 5-6.*

Defendant BGD is a Nevada limited liability company, with an office in North Las Vegas, Nevada, and is an affiliate of MPR and operates under the trade name Metal Partners International. *Id. at ¶¶ 7-8.*

BGD's steel rebar fabrication plant is situated in North Las Vegas and is equipped to fabricate rebar raw material into saleable rebar products. *Id. at ¶ 9.*

Defendant Intermetal is a Florida limited liability company, with an office in Miami, Florida and is in the business of supplying rebar and other steel products. *Id. at ¶¶ 10-11.*

Defendant Carrero is an individual residing in Aventura, Florida 33160, and who, upon information and belief, owns, directly or indirectly, 20% of and has full operational control over Defendant Intermetal. Plaintiff also alleges, on information and belief, that Intermetal and/or Carrero, and/or or another company owned and/or controlled by Intermetal and/or Carrero, is the majority owner of and has full operational control over MPR. *Id. at ¶¶ 12-13.*

Defendant Chase is a national bank association with an office Columbus, Ohio 43240. *Id. at ¶ 14.*

[6]

Defendant ADR is a Nebraska limited liability company having an address in Tampa, Florida 33602 and, upon information and belief, is affiliated with Defendant MPR.  *Id. at ¶¶ 15-16.*

**The Joint Venture Agreement**

Pursuant to a Joint Venture Agreement ("JVA") dated March 1, 2018, Defendants MPR and BGD (collectively referred to as "Metal Partners"), together with Traxys, entered a joint venture pursuant to which:

a.      Traxys would purchase rebar raw material from suppliers and have it delivered to BGD's North Las Vegas plant or a third party warehouse;

b.      Metal Partners would fabricate the rebar raw material into rebar products;

c.      Metal Partners would arrange sales of the products to their customer network;

d.      Traxys would sell the products directly to those customers;

e.      The customer payments would be paid over to Traxys for allocation in accordance with the JVA.  *Id. at ¶ 17.*

Under the JVA, the proceeds of the product sales, after deducting all costs of purchasing the rebar raw material, including Traxys' financing charges, the costs of fabrication by BGD, and other incidental costs and expenses, would be shared 50-50 between Traxys and MPR.  The JVA further provides that any losses incurred would be shared equally between Traxys and MPR.  *Id. at ¶¶ 18-19.*

Importantly, the JVA provides that, at all times until the sale of the product to the customer, the title and ownership of the rebar, and all work-in-process during the fabrication phase, and all fabricated products held for sale, shall remain with Traxys.  *Id. at ¶ 20.*

The JVA set out a detailed legal and operational structure for the joint venture and is governed by New York law. *Id. at ¶¶ 22-29.*

During operation under the JVA, MPR provided Traxys information concerning JVA activities and operations via its "Soule" ERP software system. *Id. at ¶ 30.*

As of December 31, 2019, Traxys held 4,585 metric tons of rebar at Metal Partners' North Las Vegas location or transloading facilities having a cost of $3,667,792 ("Las Vegas 12/31 Inventory"). *Id. at ¶ 31.*

In connection with the JVA, Traxys extended a 36 month term loan of $522,256 to BGD at 6% per annum interest to finance the purchase of equipment at the BGD North Las Vegas plant (the "BGD Loan Agreement"). As of February 29, 2020, the outstanding loan balance was $425,545. The loan is secured by a pledge of the North Las Vegas plant's equipment which is perfected by a UCC-1 financing statement. *Id. at ¶¶ 32-34.*

The parties expanded their arrangement to include Traxys providing financing for Metal Partners' purchase of rebar raw material wherein Traxys purchased and delivered rebar raw material to Metal Partners' New Castle, Delaware plant and third party warehouses, to be held for sale to Metal Partners or directly to customers of the joint venture ("Wholesale Inventory"). *Id. at ¶¶ 35-36.*

As of December 31, 2019, Traxys purchased and held 11,963 metric tons of rebar raw material at Metal Partners' New Castle, Delaware plant and third party warehouses, having a cost of $9,363,108 ("Wholesale 12/31 Inventory" and, collectively with Las Vegas 12/31 Inventory, the "12/31 Inventory"). *Id. at ¶ 37.*

On information and belief, as of February 29, 2020, an additional 1,014 metric tons of rebar raw material had been delivered to the North Las Vegas plant that has been invoiced by

suppliers for a total value of $755,606.64, and additional rebar raw material has been delivered and invoiced subsequent to that date ("Delivered Post-12/31 Inventory") and, as of February 29, 2020, an additional 881 metric tons of rebar raw material was on-order (undelivered) for the North Las Vegas plant that will be invoiced for a total of approximately $641,055.03, and additional rebar raw material has been ordered (but not yet delivered) subsequent to that date ("On-Order Inventory" and, collectively with Delivered Post-12/31 Inventory, "Post-12/31 Inventory"). The 12/31 Inventory referred to above and the Post-12/31 Inventory are collectively referred to as the "Traxys Inventory"). *Id. at ¶ 38.*

The JVA commenced in March 2018 and operated without material incident through October 2019. During such time. Metal Partners managed the day-to-day purchases of rebar raw material, fabrication, customer sales, fulfillment of customer orders, invoicing and collections of receivables from customers. Traxys monitored these operations via its on-line access to Metal Partners' Soule ERP software system. *Id. at ¶¶ 38-39.*

Plaintiff has alleged, on information and belief, that starting in November 2019, Metal Partners began to face financial difficulties and consequently ceased turning over to Traxys the customer funds improperly received in Metal Partners' bank accounts for the sale of Traxys's inventory. *Id. at ¶ 43.*

Metal Partners failed to pay Traxys for certain of the Warehouse Inventory sold by Traxys directly to Metal Partners and failed to pay Traxys its share of losses due under the JVA. *Id. at ¶ 44.*

In consequence of these defaults and/or breaches, Traxys was assigned as security certain ADR accounts receivable in the amount of $4,830,748.18, under which Traxys was to receive payment from ADR customers. However, Traxys never received any such payments because, on

information and belief, ADR rescinded instructions to its customers to pay the receivables to Traxys and/or collected the receivables from its customers into its own bank accounts. *Id. at ¶¶ 45-50.*

Traxys further alleges that, on information and belief, beginning in February 2020 and continuing to the present time, Metal Partners sold certain of the Traxys Inventory to customers and instructed them to pay directly to accounts in the name of Metal Partners or its affiliates at Chase, instead of as required under the JVA to Traxys's bank accounts, and that a number of such customers paid to accounts in the name of Metal Partners or its affiliates at Chase. Traxys further alleges, on information and belief, that such sales are continuing. *Id. at ¶¶ 51-52.*

Traxys also alleges, on information and belief, that Metal Partners owes contractual trade finance obligations to Chase, has defaulted on such obligations, and that commencing on or about November 2019, Chase has prohibited Metal Partners from turning over to Traxys the customer funds deposited into bank accounts of Metal Partners or its affiliates at Chase on payment for the purchase of Traxys's inventory ("Customer Funds"). *Id. at ¶¶ 53-55.*

Despite due and lawful demand, Metal Partners and Chase have failed and refused to turn over to Traxys the Customer Funds paid by third party customers for the purchase of Traxys's Inventory. *Id. at ¶¶ 56-57.*

Traxys has further alleged, on information and belief, that the amount of Customer Funds belonging to Traxys that are wrongfully deposited within bank accounts of Metal Partners or its affiliates at Chase, as of January 17, 2020, was net $5,664,000 and that approximately $3,200,000 of such amount has been received on or after January 17, 2020, and is presently being held by Chase. *Id. at ¶ 58.*

**The Joint Venture Settlement Agreement**

In consequence of Metal Partners' numerous breaches and defaults under the JVA, and following significant negotiations, on January 17, 2020, Defendants MPR, BGD, Intermetal, Carrero and Traxys executed a settlement agreement (the "Settlement Agreement") governed by New York law and which provided, in material part, as follows:

a.        Intermetal agreed to purchase the  12/31 Inventory stored at all storage locations including Metal Partners' plants or third party warehouse locations, at agreed prices, payable on 90-day terms and to be released to Intermetal in two installments.  (On information and belief, the price to be paid for such inventory is $2,789,165 for Las Vegas 12/31 Inventory and $6,568,526 for Wholesale 12/31 Inventory);

b.        Intermetal agreed to purchase all of the Post-12/31 Inventory, at Traxys's cost. (On information and belief, as of February 29, 2020 the price for such inventory is $755,606.64 for Delivered Post-12/31 Inventory and approximately $641,055.03 for On-Order Inventory);

c.        Carrero agreed to personally guarantee payment of the purchase price for the 12/31 Inventory and the Post-12/31 Inventory by Intermetal;

d.        Metal Partners acknowledged it was in possession of payments received from customers that were rightfully due to and belonging to Traxys arising from sales of the Traxys Inventory (i.e., the Customer Funds);

e.        MPR agreed to issue a promissory note for all Customer Funds for all periods through January 17, 2020.  (On information and belief, the amount of such Customer Funds received by Metal Partners and not remitted to Traxys for all periods through January 17, 2020 is $5,664,000);

f. MPR agreed to immediately turn over to Traxys all Customer Funds received after January 17, 2020. (On information and belief, the amount of such Customer Funds for the period January 17, 2020 through March 27, 2020 is approximately $3,200,000);

g. Receivables due to Traxys for sales of certain of the Wholesale Inventory to MPR and other activities, net of 90% of certain payables due by Traxys to MPR for tolling costs of fabricating rebar raw material at the North Las Vegas plant for the period through December 31, 2019, were agreed to be paid to Traxys pursuant to the terms of the MPR promissory note. (This net sum has been determined to be $1,590,555);

h. MPR agreed to pay the promissory note in equal monthly installments over 12 months;

i. All receivables for Traxys's inventory sold to customers on or before December 31, 2019 (and payments received on such receivables) were agreed to be for the account of Traxys. All receivables for Traxys's inventory sold to customers after December 31, 2019 (and payments received on such receivables) were agreed to be for the account of Intermetal;

j. The balance of the equipment loan due and owing from BGD to Traxys plus accrued interest would be paid to Traxys within 60 days of execution of the Settlement Agreement;

k. Carrero personally guaranteed the payment of the promissory note, the repayment of the equipment loan, and MPR's obligation to turn over to Traxys the Customer Funds, up to a maximum liability of $1.5 million for these obligations;

l. Traxys agreed to terminate its UCC financing statements on the Traxys Inventory upon the purchase of such inventory by Intermetal; and

m.      The parties agreed to execute a mutual release of all claims (with exceptions for

claims based on fraud, misappropriation or theft).  *Id. at ¶¶ 61-66.*

As detailed in the Traxys's Complaint, it fulfilled all conditions of the Settlement

Agreement, but the Defendants failed and refused to perform  and have challenged the

enforceability of the Settlement Agreement, all while continuing their defaults and breaches

under the JVA. *Id. at ¶¶ 67-76.*

**Events Subsequent to the Joint Venture Settlement Agreement**

Traxys alleges, on information and belief, that Metal Partners has continued to direct or

permit Customer Funds to be paid directly to bank accounts of Metal Partners or its affiliates at

Chase and that since January 17, 2020, in excess of $3.2 million of Customer Funds belonging to

Traxys have been deposited in bank accounts of Metal Partners or its affiliates at Chase. *Id. at ¶¶*

*78-79.*

Despite due and lawful demand, Metal Partners and Chase have failed and refused to turn

over to Traxys the Customer Funds paid by third party customers for the purchase of the Traxys

Inventory.  *Id. at ¶¶ 79-80.*

Traxys further alleges, on information and belief, that since February 2020 Metal Partners

has sold, and continues to sell, Traxys Inventory to customers under purchase contracts and/or

invoices issued in Metal Partners' or its affiliate's name, with instructions for the customers to

pay directly to bank accounts of Metal Partners or its affiliates at Chase, instead of Traxys's bank

accounts, as required under the JVA.  *Id. at ¶ 81.*

On January 30, 2020, Traxys had a physical count of the inventory at MPR's New Castle,

Delaware fabrication facility conducted as attended by representatives of Chase, Metal Partners

and Intermetal.  The physical count disclosed that approximately 2,133 bundles, equivalent to

3,098.89 metric tons of rebar raw material, that was expected to be stored at MPR's New Castle was not present, having an approximate value of $2.5 million. Despite due demand, Metal Partners has failed to identify the location or whereabouts of this missing rebar raw material. *Id. at ¶ 82.*

In consequence of the missing rebar raw material inventory, Traxys filed a police report and a loss claim insurance carrier. Despite due demand, Metal Partners has refused to provide physical access to its facility or the relevant books and records to the insurer's investigator, or otherwise to cooperate with the investigation of Traxys's claim. *Id. at ¶ 83.*

On or about February 6, 2020, Metal Partners discontinued Traxys's access to the Soule ERP system and subsequently has failed to provide Traxys access to books and records or other information concerning the business activities conducted under the JVA. Traxys' request to have full access restored has been ignored and/or refused and Traxys has thus been deprived of information concerning the joint venture operations, including but not limited to the sale of the Traxys Inventory, the invoicing of such sales, and receipt of customer payments for the sales of its property. Furthermore, due to such default and/or breach of obligations, Traxys is also unable to timely file certain tax returns thus subjecting Traxys to interest and penalties. *Id. at ¶¶ 84-88.*

Since February 17, 2020, Traxys, via it counsel, diligently sought Defendants MPR, BGD, Intermetal and Carrero to rectify their various defaults and/or breaches of the JVA, JVA Settlement Agreement, BGD Loan Agreement, and Assignment of Accounts Receivables, but Defendants have failed and/or refused to cure their defaults and/or breaches. *Id. at ¶¶ 89-100.*

Traxys filed this action on April 2, 2020 to seek recovery on numerous causes of action against the Defendants and, while this action is pending, seeks preliminary and injunctive relief to maintain the status quo and avoid irreparable harm. Traxys is also filing ancillary actions in

the Superior Court of Delaware, and the Clark County District Court of Nevada, seeking replevin

of the Traxys Inventory.

## **LEGAL ARGUMENT**

### I.     **PLAINTIFF MEETS THE STANDARD FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

To obtain either a temporary restraining order or a preliminary injunction, the movant

must establish: (1) irreparable harm; and (2) either (a) a likelihood of success on the merits, or

(b) the existence of serious questions going to the merits of the case to make them a fair ground

for litigation, and a balance of hardships tipping decidedly in the movant's favor. *Virgin Enters.*

*Ltd. v. Nawab*, 335 F.3d 141, 145 (2d Cir. 2003); *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei*

*Lubavitch, Inc.*, 312 F.3d 94, 96 (2d Cir. 2002); *Red Earth LLC v. United States*, 657 F.3d 138,

143 (2d Cir. 2011).

#### A.     **Plaintiff Will Suffer Irreparable Harm as a Matter of Law and Enjoining Defendants is in the Public Interest**

As set out in Traxys's Complaint, verified by its Managing Director of Steel Trading,

Todd Frank, and as summarized herein, this dispute is centered on the Defendants' numerous

breaches and defaults under a JVA for the sale and distribution of rebar.

Defendants repeated actions and/or omissions have effectively served to shut Traxys out

of the parties' joint venture and deprive it of its property and funds.  In *Espiritu Santo Holdings,*

*LP v. Libero Partners, LP*, 2019 U.S. Dist. LEXIS 84844 (S.D.N.Y. May 14, 2019), the court

held that such actions constitute irreparable harm sufficient to grant injunctive relief.  As the

court noted in its opinion:

> The real irreparable harm derives from the fact that, owing to repeated breaches of
> contract by Respondent and its principals, Petitioner is being systematically, bit by
> bit by bit, cut out of the management of the Joint Venture and of its various
> operating corporations—depriving it of the ability to make its own business

[15]

decisions about the operation of a joint venture in which it is supposed to have 50% control, while leaving it at the mercy of Libero, and principally Covarrubias (who has demonstrated repeatedly that he has no concern whatever for Petitioner), to make business decisions about Petitioner's investment that will protect Petitioner's interests. The right to control one's investment, to be able to manage a company in which one has a controlling interest (and a 50% co-equal interest is a controlling interest), is a valuable right, and it is one that cannot be quantified. *Int'l Equity Investments, Inc. v. Opportunity Equity Partners Ltd.*, 441 F. Supp. 2d 552, 563 (S.D.N.Y. 2006), aff'd, 246 F. App'x 73 (2d Cir. 2007); *Woods v. Bos. Sci. Corp.*, No. 06-cv-5380, 2006 U.S. Dist. LEXIS 96050, 2006 WL 4495530, at *22 (S.D.N.Y. Nov. 1, 2006), report and recommendation adopted, 2007 U.S. Dist. LEXIS 6946, 2007 WL 754093 (S.D.N.Y. Feb. 9, 2007) (collecting cases); *Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 115 (2d Cir. 2003); *Int'l Banknote Co. v. Muller*, 713 F. Supp. 612, 623 (S.D.N.Y. 1989); *Suchodolski Assocs.*, 2003 U.S. Dist. LEXIS 24933, 2003 WL 22909149, at *4; *Street v. Vitti*, 685 F. Supp. 379, 385 (S.D.N.Y. 1988). Petitioner founded Lusad—not Respondent, Petitioner. Yet it now no longer has any ability to control the actions of the corporation it founded. *Cf. Davis v. Rondina*, 741 F. Supp. 1115, 1125 (S.D.N.Y. 1990) ("The shareholders agreement between Davis and Rondina guarantees Davis a voice in the management of Connaught, a company which she has devoted almost ten years to building and which she has shepherded from start up to success."). The laundry list of actions that, to this Court, demonstrates a likelihood of success on the merits at arbitration—actions that are amply supported by the evidence—are causing harm to Petitioner that cannot be remediated in damages. Therefore, Petitioner is being irreparably harmed by the course of conduct described in profuse detail above.

*Espiritu*, 2019 U.S. Dist. LEXIS 84844 at *67-68. Here, Traxys's Complaint provides the factual basis for the court to determine that Traxys has satisfied the "irreparable harm" element for a preliminary injunction.

Courts have also held that the enforcement of contractual terms, particularly those between partners, is within the public interest. *Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 922 F. Supp. 2d 435, 444 (S.D.N.Y. 2013), *aff'd*, 764 F.3d 210 (2d Cir. 2014); *Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616, 626 (S.D.N.Y. 2010); *In re M.B. Int'l W.W.L.*, No. 12-cv-4945, 2012 U.S. Dist. LEXIS 110347 (S.D.N.Y. Aug. 6, 2012); and *Control Sys., Inc. v. Realized Sols., Inc.*, No. 11-cv-1423, 2011 U.S. Dist. LEXIS 108526 (D. Conn. Sept. 22, 2011). Traxys relies on the enforcement of the JVA, the JVA Settlement

Agreement, and the BGD Loan Agreement, to satisfy this element of its request for a preliminary injunction.

### B.    Plaintiff is Substantially Likely to Succeed on the Merits of its Claims

Traxys is substantially likely to succeed on the merits of its several causes of action against the Defendants.  Set out below are the causes of action alleged in the Traxys's Complaint, the elements required for each, and why Traxys is substantially likely to succeed on the merits of each cause of action.

### 1.    First Cause of Action - Breach of Contract as against MPR, BGD Intermetal and Carrero

The First Cause of Action seeks recovery for the Defendants' failure to comply with the JVA Settlement Agreement as concerns the obligation to purchase the 12/31 Inventory and the Post-12/31 Inventory.

A cause of action for breach of contract under New York law for a settlement agreement has the same elements as any other contract: "(1) the parties entered into a valid agreement, (2) performance by plaintiff, (3) defendant's failure to perform, and (4) resulting damage." See *Schon Family Found. v. Brinkley Capital Ltd.*, 2018 N.Y. Misc. LEXIS 5609 (Sup. Ct. New York Co. 2018) citing *VisionChina Media Inc. v. S'holder Representative Servs., LLC*, 109 A.D.3d 49, 58, 967 N.Y.S.2d 338 (1st Dep't 2013).

Traxys has shown: (i) the existence of a valid JVA Settlement Agreement; (2) that it performed thereunder; (3) that the Defendants have failed to perform; and (4) that it has been damaged due to the Defendants' breach.  Accordingly, Traxys has shown a substantial likelihood that it will prevail on the merits of the First Cause of Action.

### 2.     Second Cause of Action - Breach of Contract as against MPR and BGD

The Second Cause of Action seeks recovery for the stated Defendants failure to comply with the JVA in the following respects:

(i)     sale of the Traxys Inventory under their own names;

(ii)     failure to turn over the proceeds of the sale of Traxys Inventory including but not limited to Customer Funds;

(iii)     failure to maintain safely and account for the missing 3,098.89 metric tons of rebar raw material expected to be stored at MPR's New Castle plant and to cooperate with the investigation of such loss;

(iv)     failure to provide Traxys with financial and accounting data concerning the JVA operations; and

(v)     failure to account for the profits or losses on the sale (without Traxys' consent) of the Traxys Inventory and failure to pay over Traxys's share of the profits to Traxys or to reimburse Traxys for MPR's or BGD's share of the losses incurred by Traxys.

The elements of a cause of action for breach of contract under New York law are set out in *Schon Family Found. v. Brinkley Capital Ltd.*, 2018 N.Y. Misc. LEXIS 5609 (Sup. Ct. New York Co. 2018). Traxys has shown: (i) the existence of a valid joint venture agreement; (2) that it performed thereunder; (3) that the Defendants MPR and BGD have failed to perform as stated; and (4) that it has been damaged due to the Defendants' breach. As such, the Plaintiff has shown a substantial likelihood that it will prevail on the merits of the Second Cause of Action.

### 3.     Third Cause of Action - Breach of Contract as against ADR

The Third Cause of Action seeks recovery against Defendant ADR for its failure to comply with an Assignment of certain accounts receivables to Traxys. The elements of a cause

[18]

of action for breach of contract under New York law are set out in *Schon Family Found. v. Brinkley Capital Ltd.*, *supra.*  Traxys has shown: (i) the existence of a valid Assignment of certain of ADR's accounts receivable; (2) that it performed thereunder; (3) that the Defendant ADR has failed to perform thereunder in not requiring and ensuring that its customers paid the accounts receivables to Plaintiff; and (4) that it has been damaged due to the Defendants' breach. As such, the Plaintiff has shown a substantial likelihood that it will prevail on the merits of the Third Cause of Action.

### 4.  Fourth Cause of Action - Breach of Contract as against BGD

The Fourth Cause of Action seeks recovery for Defendant BGD's breach of the BGD Loan Agreement.  The elements of a cause of action for breach of contract under New York law are set out in *Schon Family Found. v. Brinkley Capital Ltd.*, *supra.*  Traxys has shown: (i) the existence of a valid loan agreement; (2) that it performed thereunder; (3) that the Defendant BGD breached the loan agreement by not paying the monthly loan installments, plus interest thereon, for the purchase of equipment at the BGD North Las Vegas plant; and (4) that Traxys has been damaged due to the Defendant BGD's breach.  As such, Traxys has shown a substantial likelihood that it will prevail on the merits of the Fourth Cause of Action.

### 5.  Fifth Cause of Action - Conversion as against MPR, BGD, Intermetal and Carrero

The Fifth Cause of Action seeks recovery against the stated Defendants for their conversion of the Traxys Inventory and the proceeds from the sale thereof (i.e., "Customer Funds.")

Under New York law, "[T]wo key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference

with it, in derogation of plaintiff's rights." *Pappas v. Tzolis*, 20 N.Y.3d 228, 234 (2012) *citing Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y. 3d 43, 49-50 (2006).

Traxys has shown that the stated Defendants willfully and without lawful justification exercised an unauthorized dominion over the Traxys Inventory, thereby satisfying the first key element, and, without Traxys's consent and to the exclusion of Traxys's rights, by selling the Traxys Inventory to customers and invoicing for such inventory directly in the name of Metal Partners or its affiliates and/or retaining the proceeds thereof including but not limited to Customer Funds paid for the purchase of Traxys Inventory in the bank accounts of Metal Partners or its affiliates, thereby satisfying the second key element.

As such, Traxys has shown a substantial likelihood that it will prevail on the merits of the Fifth Cause of Action.

      **6.**     **Sixth Cause of Action - Conversion as against
MPR, BGD, Intermetal, Carrero and Chase**

The Sixth Cause of Action seeks recovery against Defendants MPR, BGD, Carrero and Chase for their conversion of the proceeds from the sale of the Traxys Inventory (*i.e.*, "Customer Funds."). The elements of a cause of action for conversion under New York law are set out in *Pappas v Tzolis*, 20 N.Y.3d 228, 234 (2012).

Traxys has shown that Defendants MPR, BGD, Intermetal, Carrero and Chase willfully and without lawful justification exercised an unauthorized dominion over Traxys's property, thereby satisfying the first key element of conversion, without Traxys's consent and to the exclusion of Traxys's rights, by failing to turn over Customer Funds to Traxys, thereby satisfying the second key element of conversion. Traxys has therefore shown a substantial likelihood that it will prevail on the merits of the Sixth Cause of Action.

[20]

**7.     Seventh Cause of Action - Conversion and
        Breach of Bailment as against MPR**

The Seventh Cause of Action seeks recovery against Defendant MPR for its conversion
and breach of bailment of Traxys' rebar raw material to be held for sale to MPR and/or
customers of the joint venture and which was delivered by Traxys to MPR at its New Castle,
Delaware plant.  The elements of a cause of action for conversion under New York law are set
out in *Pappas v Tzolis*, 20 N.Y.3d 228, 234 (2012).  The elements of a cause of action for
bailment under New York law are set out in the First Department's decision in *Pivar v. Graduate
Sch. of Figurative Art of the N.Y. Acad. of Art*, 290 A.D.2d 212, 212-13 (1st Dep't 2002) where it
stated the following

> As this Court stated in Martin v Briggs (235 A.D.2d 192, 197): 'A 'bailment does
> not necessarily and always, though generally, depend upon a contractual relation.
> It is the element of lawful possession, however created, and duty to account for the
> thing as the property of another that creates the bailment, regardless of whether
> such possession is based on contract in the ordinary sense or not.' (Foulke v New
> York Consolidated R.R. Co., 228 N.Y. 269, 275.) A bailment 'may arise from the
> bare fact of the thing coming into the actual possession and control of a person
> fortuitously, or by mistake as to the duty or ability of the recipient to effect the
> purpose contemplated by the absolute owner.' (Phelps v People, 72 N.Y. 334, 358.)
> A bailment 'may be created by operation of law. It is the element of lawful
> possession, and the duty to account for the thing as the property of another, that
> creates the bailment, whether such possession results from contract or is otherwise
> lawfully obtained. It makes no difference whether the thing is intrusted to a person
> by the owner or by another. Taking lawful possession without present intent to
> appropriate creates a bailment.'

*Pivar,* 290 A.D.2d at 213.  Traxys has shown that Defendant MPR held and maintained custody
of Traxys' rebar raw material delivered to MPR at the latter's premises, as bailee.  This satisfies
the first key element of conversion and also demonstrates that Traxys turned its property over to
MPR and thereby created a bailment.

Further, the January 30, 2020 physical count of the rebar raw material at MPR's New
Castle facility disclosed that 2,133 bundles, equivalent to 3,098.89 metric tons of rebar raw

material, was not present, having a cost of $2,519,682.  Thus, in violation of its obligations as

bailee, Defendant MPR failed to properly and adequately care for, supervise, and preserve the

rebar raw material, and also failed to account for the missing rebar raw material delivered by

Traxys to MPR. Alternatively, Traxys has shown that Defendant MPR has exercised an

unauthorized dominion over the rebar raw material to the exclusion of Traxys's rights by

removing and/or misappropriating the rebar raw material resulting in the 2,133 missing bundles.

These facts satisfy the second key element of conversion and also show that MPR breached its

bailee obligations.

Therefore, Traxys has shown a substantial likelihood that it will prevail on the merits of

the Seventh Cause of Action.

> **8.      Eighth Cause of Action - Unjust Enrichment**
> **as to MPR, BGD, Intermetal and Carrero**

The Eighth Cause of Action seeks recovery against Defendants MPR, BGD, Intermetal

and Carrero for their unjust enrichment based on their retention of the Traxys Inventory,

accounts receivable relating thereto, or the proceeds thereof (*i.e*., the "Customer Funds.")

Under New York law, to prevail on a claim for unjust enrichment a plaintiff must

establish: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and

good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield*

*of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616

(2d Cir. 2000)).

Traxys has shown that Defendants MPR, BGD, Intermetal and Carrero have benefitted by

retaining the Traxys Inventory, related accounts receivables, and/or the Customer Funds, all of

which has been to Traxys's detriment and expense.   MPR, BGD, Intermetal and Carrero would

be unjustly enriched if permitted to retain the Traxys Inventory, accounts receivables, and/or

Customer Funds.  Furthermore, it would be contrary to equity and against good conscience to permit them to continue to retain or use for their benefit the Traxys Inventory, accounts receivables, and/or Customer Funds.

Traxys has thus shown a substantial likelihood that it will prevail on the merits of the Eighth Cause of Action.

### 9.    Ninth Cause of Action - Unjust Enrichment as to Chase

The Ninth Cause of Action seeks recovery against the Defendant Chase for its unjust enrichment based on retention of the Customer Funds related to the Traxys Inventory.  The elements of a cause of action for unjust enrichment under New York law are set out in *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006), *supra*.

Traxys has shown that Defendant Chase has benefitted by the retention of the Customer Funds and that this has been to Traxys's determinant and expense. It is self-evident that permitting Chase to continue to retain, or use for its benefit, the Customer Funds related to the Traxys Inventory would be contrary to equity and against good conscience.

Traxys has shown it has a substantial likelihood that it will prevail on the merits of the Ninth Cause of Action.

### 10.    Tenth Cause of Action – Constructive Trust

The Tenth Cause of Action seeks the imposition of a constructive trust against the Defendants MPR, BGD, Intermetal, Carrero and Chase as they each had a fiduciary obligation to the Traxys concerning Traxys's property consisting of the Traxys Inventory and the related accounts receivables / Customer Funds (the "Traxys Property").

A plaintiff must show the following four elements to obtain a constructive trust under New York law: "(1) a fiduciary or confidential relationship between the parties, (2) a promise, (3) a transfer of some asset in reliance upon the promise, and (4) unjust enrichment flowing from the breach of the promise." *Mei Yun Chen v. Mei Wan Kao*, 97 A.D.3d 730, 730, 948 N.Y.S.2d 426 (2nd Dep't 2012); *McGrath v. Hilding*, 41 N.Y.2d 625, 629 (1977).  However, it should be noted that "these elements serve only as a guideline, a constructive trust may still be imposed even if all of the elements are not established." *Marini v Lombardo*, 79 A.D.3d 932, 933, 912 N.Y.S.2d 693 (2nd Dep't 2010).

Traxys has shown that Defendants MPR, BGD, Intermetal, Carrero and Chase each had a fiduciary obligation to Plaintiff concerning the Traxys Property.  The Traxys Property was transferred to Defendants MPR, BGD, Intermetal, Carrero and/or Chase based on promises set forth in the JVA, the JVA Settlement Agreement, the BGD Loan Agreement, and the Assignment of Accounts Receivables.  Through no fault of its own, Traxys has been wrongfully deprived of the Traxys Property by Defendants MPR, BGD, Intermetal, Carrero and Chase.

Because Defendants MPR, BGD, Intermetal, Carrero and Chase have no legal or equitable right, claim or interest in the Traxys Property, they have each been unjustly enriched by their retention of the same to Traxys's detriment and expense.  Therefore, Defendants MPR, BGD, Intermetal, Carrero and Chase should be determined to be involuntary trustees holding the Traxys Property, and all profits or proceeds therefrom, in constructive trust for Traxys's benefit with a duty to immediately convey the same to Traxys.

Therefore, Traxys has shown it has a substantial likelihood that it will prevail on the merits of the Tenth Cause of Action.

[24]

C.      **Alternatively, Plaintiff Has Shown Serious Questions to Make a**
       **Fair Ground for Trial and the Balance of Hardships is in its Favor**

Traxys is also entitled to a preliminary injunction under the alternate standard for a

preliminary injunction, *i.e.*, there are serious questions going to the merits of Traxys's causes of

action to make them a fair ground for litigation, and the balance of hardships tips decidedly in

Traxys's favor.  *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96

(2d Cir. 2011).

The serious question-balance-of-hardships-inquiry is satisfied for all of the reasons that

Traxys has shown that it is substantially likely to prevail on its claims.  Traxys has thus raised

serious questions on all of its causes of action for which there is a fair ground for litigation.  As

such, this Court must balance the harm which will be caused to Traxys by a denial of injunctive

relief, against any harm that granting an injunction may cause to the Defendants, and which

would not be cured if Defendants prevailed on the merits and recovered on any injunction bond

that Traxys is required to post in connection with its request for injunctive relief.

As stated, the balance of hardships tilts decidedly in Traxys's favor. Traxys has amply

demonstrated in its Complaint that it has been damaged, and continues to be damaged, in the

millions of dollars, due to the Defendants' various defaults and/or breaches of the JVA, JVA

Settlement Agreement, BGD Loan Agreement, and Assignment of Accounts Receivables.  The

only "hardship" that might befall the Defendants is the imposition of an obligation to comply

with the several agreements that they entered into with Traxys at arm's length.  Conversely, if

no injunction is issued, Traxys will suffer significant, irreparable hardship because it will

continue to lack any control over the joint venture or its property held by the Defendants.

*Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 909 (2d Cir. 1990) ("irreparable harm

discussed earlier" meets plaintiff's burden under the balance of hardships).

[25]

## **CONCLUSION**

For all of the foregoing reasons, this Court should preliminarily enjoin and temporarily

restrain the Defendants as requested by Traxys.

Dated: April 9, 2020
      New York, New York

            The Plaintiff,
            TRAXYS NORTH AMERICA LLC

     By:_____
            Patrick F. Lennon
            Kevin J. Lennon
            LENNON, MURPHY & PHILLIPS, LLC
            420 Lexington Avenue, Suite 300
            New York, NY 10170
            (212) 490-6050 – phone
            (212) 490-6070 – fax
            pfl@lmplaw.net
            kjl@lmplaw.net

[26]

## <u>CERTIFICATION OF COMPLIANCE</u>

In accordance with the Court's Individual Rules, the undersigned hereby certifies that the within Memorandum of Law complies with all formatting rules and that its total word count, not including the cover page, certification of compliance, table of contents, and table of authorities, is 6,378.

_____

Patrick F. Lennon