UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRAXYS NORTH AMERICA LLC,<br><br>        Plaintiff,<br><br> - against -<br><br>METAL PARTNERS REBAR, LLC, BGD LV HOLDING, LLC, INTERMETAL REBAR, L.L.C., JOSE CARRERO, JPMORGAN CHASE BANK N.A. and ADR REBAR, LLC,<br><br>        Defendants. | Case No.:  20-cv-02766 (JGK)<br><br><br>**FIRST AMENDED<br>COMPLAINT** |

Plaintiff, Traxys North America LLC ("Traxys"), by its attorneys, as and for its First Amended Complaint, respectfully alleges the following:

## JURISDICTION AND VENUE

1.      Traxys brings this action pursuant to the Court's diversity jurisdiction under 28 U.S.C. 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the claims occurred in New York.

## THE PARTIES

3.      Plaintiff Traxys is a Delaware limited liability company having an address at 299 Park Avenue, New York, New York 10171.

4.      Traxys' sole member is a citizen of Luxembourg.

5.      Traxys is in the business of, inter alia, sourcing, marketing and distributing metal commodities, including steel rebar products, and providing trade financing for such activities.

6.     Defendant Metal Partners Rebar LLC ("MPR") is an Illinois limited liability company with its principal office at 302 Knights Run Ave., Suite 1104, Tampa, Florida 33602.

7.     Upon information and belief, MPR's members, Frank Bergren and Douglas R. Anderson, are Illinois citizens, and Jose Carrero is a citizen of Florida.

8.     MPR is in the business of fabricating, marketing and distributing steel rebar products to the construction trade.

9.     Defendant BGD LV Holdings, LLC ("BGD") is a Nevada limited liability company with its principal office at 3101 East Craig Road, North Las Vegas, Nevada 89030.

10.     Upon information and belief, BGD's sole member, Frank Bergren, is an Illinois citizen.

11.     BGD is an affiliate of MPR and operates under the trade name Metal Partners International.

12.     BGD owns and operates a steel rebar fabrication plant in North Las Vegas, Nevada, which is equipped to fabricate rebar raw material into saleable rebar products.

13.     Defendant Intermetal Rebar, L.L.C. ("Intermetal") is a Florida limited liability company having an address at 10800 Biscayne Blvd, Ste. 870, Miami, Florida 33161-7402, and it's a citizen of Florida.

14.     Upon information and belief, Intermetal's members, Jose Carrero and Levent Cerezci, are Florida citizens.

15.     Intermetal is in the business of supplying rebar and other steel products.

16.     Defendant Jose (Joe) Carrero ("Carrero") is an individual having an address at 6000 Island Blvd., Aventura, Florida 33160, who, upon information and belief, owns, directly or indirectly, 20% of and has full operational control over Intermetal.

17.     On information and belief, Intermetal and/or Carrero and/or or another company owned and/or controlled by Intermetal and/or Carrero, is the majority owner of and has full operational control over Metal Partners.

18.     Defendant JPMorgan Chase Bank N.A. ("Chase") is a national bank association with its main office at 1111 Polaris Parkway, Columbus, Ohio 43240, and it a citizen of Ohio.

19.     Defendant ADR Rebar, LLC ("ADR") is a Nebraska limited liability company having an address at 302 Knights Run Ave., Tampa, Florida 33602.

20.     Upon information and belief, Defendant ADR is an entity affiliated with Defendant MPR and its sole member, Frank Bergren, is an Illinois citizen.

## FACTS COMMON TO ALL COUNTS

### The Joint Venture Agreement

21.     Pursuant to a Joint Venture Agreement ("JVA") dated March 1, 2018, Defendants Metal Partners Rebar, LLC (MPR) and BGD LV Holding, LLC (BGD) (collectively "Metal Partners"), together with Traxys, entered into a business arrangement under which:

    a.      Traxys would purchase rebar raw material from suppliers and have it delivered to BGD's North Las Vegas plant or a third party warehouse;

    b.      Metal Partners would fabricate the rebar raw material into rebar products;

    c.      Metal Partners would arrange sales of the products to their customer network;

    d.      Traxys would sell the products directly to those customers;

    e.      The customer payments would be paid over to Traxys for allocation in accordance with the JVA.

22.     Under the JVA, the proceeds of the product sales, after deducting all costs of purchasing the rebar raw material, including Traxys' financing charges, the costs of fabrication by BGD, and other incidental costs and expenses, would be shared 50-50 between Traxys and MPR.

23.     The JVA also provides that any losses incurred in the joint venture operation would be shared equally between Traxys and MPR.

24.     The JVA provides that, at all times until the sale of the product to the customer, the legal title and ownership of the rebar raw material, as well as all work-in-process during the fabrication phase, and all fabricated products held for sale, shall remain with Traxys.

25.     The JVA is governed by New York law.

26.     Traxys as secured party duly filed UCC-1 Financing Statements with the Secretary of State of Illinois and the Secretary of State of Nevada against both MPR and BGD as debtors (under consignment) to confirm Traxys's ownership of the inventory while situated on the premises of or under the control of MPR and/or BGD.

27.     The JVA sets out the legal structure of the joint venture:

-      The Joint Venture shall not be a separate legal entity or person, and shall exist solely as a matter of contract among the Parties;

-      No Party shall have the right or authority to bind the Joint Venture or any other Party to any transaction or agreement, or to enter into any transaction with a third party for the benefit or risk of the Joint Venture without the express written consent of the other Parties, except as expressly set forth herein;

-      All purchase contracts, sale contracts, bills and invoices for rebar and products purchased or sold on behalf of the Joint Venture will be in the name of Traxys (d/b/a MPI) as the contracting party and title to all such rebar and products inventory will be held in the name of Traxys;

-      Traxys will hold and remit for the benefit of the Joint Venture all profits of the Business generated by Traxys acting in the foregoing capacity on behalf of the Joint Venture;

- Neither MPR nor [BDG] shall have any property interests in Traxys but shall solely have a contractual right to share in the profits and (losses) of the Business as described herein;

- Title to all inventory and finished product shall be held in the name of Traxys, and all contracts and agreements for the insurance and sale of such Product, shall be entered into and held in the name of Traxys, and shall be the sole property of Traxys. All invoices for sales of product shall likewise be in the name of Traxys;

- The Joint Venture shall not maintain any separate bank accounts for the Joint Venture's business. Except as otherwise specifically provided herein, all financial transactions for and on behalf of the Joint Venture (including all receipts of and payments to and by the Joint Venture) shall be effected through the bank accounts of Traxys. The officers and agents of Traxys shall have sole signatory authority over such accounts.

28. Under the JVA neither MPR nor BGD would ever have ownership of or title over any of the inventory.

29. The JVA provides that all customer purchase contracts and all invoices to customers are to be issued in the name of Traxys.

30. The JVA further provides that customer payments for the purchase of the finished goods or other inventory sold are to be paid directly to Traxys's bank accounts.

31. Under the JVA neither MPR nor BGD would ever have the right to issue customer purchase contracts or invoices in its own name and would never have ownership of or title to any customer funds received for the sale of products or other inventory.

32. MPR's sole right under the JVA was to receive from Traxys its 50% share of the net profits of the joint venture operation, if any.

33. The JVA further provides that Metal Partners will provide Traxys with weekly summary reports of trading activities and positions and such other financial and business information as Traxys may request concerning the joint venture operations.

34.     During the joint venture operations, MPR provided Traxys information concerning the joint venture's activities and operations via its "Soule" ERP software system.

35.     As of December 31, 2019, Traxys held 4,585 metric tons of rebar (raw material, work in process, and finished goods inventory) at Metal Partners' North Las Vegas location or transloading facilities having a cost of $3,667,792 ("Las Vegas 12/31 Inventory").

36.     In connection with the JVA, Traxys extended a term loan of $522,256 to BGD to finance the purchase of equipment at the BGD North Las Vegas plant (the "BGD Loan Agreement").

37.     The loan was to be repaid by BGD in monthly installments over 36 months together with interest at 6% per annum.  The outstanding balance of such loan including accrued interest was $425,545 as of February 29, 2020.

38.     The loan is secured by a pledge of the North Las Vegas plant's equipment which security interest is perfected by a duly filed UCC-1 financing statement filed with the Nevada Secretary of State, U.C.C. Division, naming Traxys as secured party and BGD as debtor.

39.     In addition to financing the purchase of rebar raw material for BGD's North Las Vegas plant, the parties expanded their arrangement to include Traxys providing financing for Metal Partners' purchase of rebar raw material for its general trading and distribution operations.

40.     In this connection, Traxys would purchase and deliver rebar raw material to Metal Partners' New Castle, Delaware location and third party warehouses, to be held for sale to Metal Partners or directly to customers of the joint venture ("Wholesale Inventory").

41.     As of December 31, 2019, Traxys purchased and held 11,963 metric tons of rebar raw material at Metal Partners' New Castle, Delaware location and third party warehouses, having

a cost of $9,363,108 ("Wholesale 12/31 Inventory" and, collectively with Las Vegas 12/31 Inventory, the "12/31 Inventory").

42.     On information and belief, as of February 29, 2020, an additional 1,014 metric tons of rebar raw material had been delivered to the North Las Vegas plant that has been invoiced by suppliers for a total value of $755,606.64, and additional rebar raw material has been delivered and invoiced subsequent to that date ("Delivered Post-12/31 Inventory") and, as of February 29, 2020, an additional 881 metric tons of rebar raw material was on-order (undelivered) for the North Las Vegas plant that will be invoiced for a total of approximately $641,055.03, and additional rebar raw material has been ordered (but not yet delivered) subsequent to that date ("On-Order Inventory" and, collectively with Delivered Post-12/31 Inventory, "Post-12/31 Inventory").  The 12/31 Inventory referred to above and the Post-12/31 Inventory are collectively referred to as the "Traxys Inventory").

43.     Business and operations under the JVA commenced in March 2018 and operated without material incident through October 2019.

44.     During these operations, Metal Partners managed the day-to-day purchases of rebar raw material, fabrication, customer sales, fulfillment of customer orders, invoicing and collections of receivables from customers.  Traxys monitored these operations via its on-line access to Metal Partners' Soule ERP software system, into which all these activities were entered.  As a result, Traxys was able to track all inventory, orders, production, sales, and collections and to book all transactions in its own electronic trading system.  In this manner, Traxys personnel could oversee and account for these activities on a daily basis.

45.     During the normal course of performance under the JVA, the inventory purchased by Traxys for the joint venture was sold to customers under purchase contracts and invoices issued

in Traxys's name, with instructions for the customers to pay the invoiced amounts directly to Traxys's bank account (at Deutsche Bank in New York). However, on information and belief, a portion of the customers paid the invoice amount directly to dedicated bank accounts of Metal Partners or its affiliates at Chase.

46.    On information and belief, prior to November 2019, any customer funds received in bank accounts of Metal Partners or its affiliates at Chase were turned over by Metal Partners to Traxys.

47.    On information and belief, commencing on or about November 2019, Metal Partners began to face financial difficulties and consequently ceased turning over to Traxys the customer funds improperly received in Metal Partners' bank accounts for the sale of Traxys's inventory.

48.    Metal Partners also failed to pay Traxys for certain of the Warehouse Inventory sold by Traxys directly to Metal Partners and failed to pay Traxys its share of losses due under the JVA.

49.    In response to these defaults, MPR offered to assign to Traxys as security for MPR's obligations, certain accounts receivable held by ADR up to the amount of $4,830,748.18. This assignment was effected by an Assignment of Accounts Receivable dated November 5, 2019, given by Defendant ADR in favor of Traxys.

50.    ADR was obligated under the Assignment of Accounts Receivable to notify its customers to remit to Traxys all sums due on the receivables owed to ADR and, further, to remit to Traxys any sums ADR receives on account of such receivables.

51.     Upon information and belief, ADR sent to its customers due notice of the assignment of the ADR accounts receivables with instructions for payment of the receivables to Traxys's account.

52.     Traxys as secured party duly filed a UCC-1 Financing Statement with the Nebraska Secretary of State, U.C.C. Division, against ADR as debtor to confirm Traxys's interest in the ADR receivables.

53.     Traxys has not received any payments on the ADR receivables.

54.     Upon information and belief, ADR unilaterally rescinded its instruction that the customers pay the receivables to Traxys and/or has collected the receivables from the customers into its own bank accounts, including dedicated bank accounts at Chase.

55.     On information and belief, beginning in February 2020, Metal Partners has sold certain of the Traxys Inventory to customers under purchase contracts and/or invoices issued in Metal Partners' or its affiliate's name, with instructions for the customers to pay the invoiced amounts directly to dedicated bank accounts of Metal Partners or its affiliates at Chase, instead of Traxys's bank accounts, and  a number of these customers paid the invoiced amounts directly to dedicated bank accounts of Metal Partners or its affiliates at Chase.

56.     On information and belief, Metal Partners is continuing to sell Traxys Inventory to customers under purchase contracts and/or invoices issued in Metal Partners' or its affiliate's name, with instructions for the customers to pay the invoiced amounts directly to dedicated bank accounts of Metal Partners or its affiliates at Chase, instead of Traxys's bank accounts.

57.     On information and belief, Metal Partners owes contractual trade finance obligations to Chase.

58.     On information and belief, Metal Partners has defaulted in its trade finance obligations to Chase.

59.     On information and belief, commencing on or about November 2019, Chase has prohibited Metal Partners from turning over to Traxys the customer funds deposited into bank accounts of Metal Partners or its affiliates at Chase on payment for the purchase of Traxys's inventory ("Customer Funds").

60.     Despite due demand, Metal Partners has failed and refused to turn over to Traxys the Customer Funds paid by third party customers for the purchase of Traxys's Inventory.

61.     Despite due demand, Chase has failed and refused to turn over to Traxys the Customer Funds received in bank accounts of Metal Partners or its affiliates that were paid for the purchase of Traxys's inventory.

62.     On information and belief, the amount of the Customer Funds belonging to Traxys that is wrongfully deposited in dedicated bank accounts of Metal Partners or its affiliates at Chase, as of January 17, 2020, was net $5,664,000.  On information and belief, approximately $3,200,000 of such amount has been received on or after January 17, 2020, and is presently being held by Chase.  On information and belief, additional Customer Funds belonging to Traxys continue to be wrongfully deposited in bank accounts of Metal Partners or its affiliates at Chase.

63.     On information and belief, Metal Partners has retained a financial advisor and restructuring counsel to address a potential restructuring of Metal Partners' operations and trade facilities with Chase.

64.     On information and belief, Intermetal and/or Carrero and/or another company owned and/or controlled by Intermetal and/or Carrero, have become the majority owner of and have full operational control of Metal Partners.

**The Joint Venture Settlement Agreement**

65.     On or about November 25, 2019, Carrero contacted Todd Frank, the commercial representative of Traxys in charge of the joint venture with Metal Partners, to advise that Intermetal had been a silent investor in Metal Partners for a number of years and that directly or indirectly through Intermetal or another affiliate Carrero had taken over the ownership and control of Metal Partners and wished to negotiate a termination of the JVA and settlement of all of Traxys's claims.

66.     Following arm's length negotiations, on January 17, 2020, MPR, BGD, Intermetal, Carrero and Traxys executed a settlement agreement (the "Settlement Agreement").

67.     The Settlement Agreement provides, in material part, as follows:

    a.      Intermetal agreed to purchase the  12/31 Inventory stored at all storage locations including Metal Partners' plants or third party warehouse locations, at agreed prices, payable on 90-day terms and to be released to Intermetal in two installments.  (On information and belief, the price to be paid for such inventory is $2,789,165 for Las Vegas 12/31 Inventory and $6,568,526 for Wholesale 12/31 Inventory);

    b.      Intermetal agreed to purchase all of the Post-12/31 Inventory, at Traxys's cost.  (On information and belief, as of February 29, 2020 the price for such inventory is $755,606.64 for Delivered Post-12/31 Inventory and approximately $641,055.03 for On-Order Inventory);

    c.      Carrero agreed to personally guarantee payment of the purchase price for the 12/31 Inventory and the Post-12/31 Inventory by Intermetal;

d.    Metal Partners acknowledged it was in possession of payments received from customers that were rightfully due to and belonging to Traxys arising from sales of the Traxys Inventory (i.e., the Customer Funds);

e.    MPR agreed to issue a promissory note for all Customer Funds for all periods through January 17, 2020.  (On information and belief, the amount of such Customer Funds received by Metal Partners and not remitted to Traxys for all periods through January 17, 2020 is $5,664,000);

f.    MPR agreed to immediately turn over to Traxys all Customer Funds received after January 17, 2020.  (On information and belief, the amount of such Customer Funds for the period January 17, 2020 through March 27, 2020 is approximately $3,200,000);

g.    Receivables due to Traxys for sales of certain of the Wholesale Inventory to MPR and other activities, net of 90% of certain payables due by Traxys to MPR for tolling costs of fabricating rebar raw material at the North Las Vegas plant for the period through December 31, 2019, were agreed to be paid to Traxys pursuant to the terms of the MPR promissory note.  (This net sum has been determined to be $1,590,555);

h.    MPR agreed to pay the promissory note in equal monthly installments over 12 months;

i.    All receivables for Traxys's inventory sold to customers on or before December 31, 2019 (and payments received on such receivables) were agreed to be for the account of Traxys.  All receivables for Traxys's inventory sold to customers after December 31, 2019 (and payments

received on such receivables) were agreed to be for the account of Intermetal;

j.    The balance of the equipment loan due and owing from BGD to Traxys plus accrued interest would be paid to Traxys within 60 days of execution of the Settlement Agreement;

k.    Carrero personally guaranteed the payment of the promissory note, the repayment of the equipment loan, and MPR's obligation to turn over to Traxys the Customer Funds, up to a maximum liability to him of $1.5 million for these obligations;

l.    Traxys agreed to terminate its UCC financing statements on the Traxys Inventory upon the purchase of such inventory by Intermetal; and

m.    The parties agreed to execute a mutual release of all claims (with exceptions for claims based on fraud, misappropriation or theft).

68.    The Settlement Agreement provides that its effectiveness is subject to, inter alia, the following condition precedent:

> All definitive legal documentation to evidence the terms of this Settlement, including but not limited to the purchase and sale agreement between IM and Traxys, the Promissory Note, the Guaranties, the amendment of the Equipment Loan, UCC termination statements, and the mutual releases, shall have been prepared and agreed to the satisfaction of each of the parties; and shall have been duly executed by each of the respective parties thereto, provided that (i) each party agrees to act in good faith in the negotiation and preparation of such documentation and (ii) in the event the parties cannot agree on such documentation within 5 business days after the execution hereof, then at the option of either party this Settlement shall become the definitive settlement agreement.

69.    The Settlement Agreement provides that it shall become effective on the third business day after the conditions precedent are satisfied or waived in writing.

70.    The Settlement Agreement is governed by New York law.

71.     Following execution of the Settlement Agreement, Traxys prepared and delivered to Carrero, personally and in his capacity as authorized representative of MPR, BGD and Intermetal, drafts of definitive settlement documents, including:

a.     a formal definitive Settlement Agreement;

b.     a Sale Contract for the sale of the Traxys Inventory to Intermetal;

c.     a Promissory Note of MPR with respect to the pre-January 17th Customer Funds and Net Receivable due to Traxys;

d.     Carrero's Guaranty of Intermetal's purchase obligations;

e.     Carrero's Limited Guaranty of MPR's payment and other obligations; and

f.     an Amendment of Promissory Note of BGD.

72.     On January 30, 2020, counsel for Intermetal and Carrero wrote to Traxys, for the first time: "Just dropping you an email introducing myself.  I will be working with Joe Carrero and Joe Tedesco [Metal Partners' CFO] on this matter.  I am awaiting comments from management and will respond to your documents as soon as we can coordinate our comments."

73.     Thereafter, it became apparent that Intermetal, Metal Partners and Carrero had no intention of complying with the Settlement Agreement.  On February 3rd, Traxys asked counsel: "Just checking in to ask when you expect to send your comments."  Counsel for Intermetals and Carrero replied that same day: "I don't have a timetable but I will check with them.  I know this needs to be coordinated with a couple of other projects."  In a telephone call with Traxys's general counsel on February 10th, counsel for Carrero and Intermetal and counsel for Metal Partners challenged the validity of the Settlement Agreement and made other assertions suggesting their clients may not perform their obligations.  They also stated that Metal Partners was in an "insolvency situation", that Metal Partners had retained bankruptcy counsel and a financial advisor

and was in discussions with Chase regarding a financial restructuring, and also advised that certain customer funds belonging to Traxys were being held by Chase.

74.    After Traxys provided counsel with a copy of the JVA and other requested documents on February 11, 2020, counsel for Intermetal and Carrero wrote to Traxys:  "As we discussed yesterday, we are working to develop solutions to the joint venture, which also need to be addressed with the bank.  Todd Frank continues to try to communicate with Joe Carrero frequently.  Kindly ask him to stop doing this.  It is counterproductive to our mutual goals."  Todd Frank had been seeking to communicate with Joe Carrero to accelerate the consummation of the settlement.

75.    Following this discussion, on February 11, 2020, Traxys wrote to counsel for Carrero, Intermetal and Metal Partners:

> Gentlemen:
>
> Thank you for your time on the phone yesterday.
>
> I am looking forward to our next call, anticipated for Wednesday afternoon, where I expect you will discuss the next steps regarding the settlement transaction among Intermetals, Metal Partners, Joe Carrero, and Traxys, that was executed on Jan 17[th].
>
> In the meantime I'd like to address a few important matters:
>
> 1.    I am in receipt of Mark's email below. I am not aware, and do not agree, that we are on a litigation footing such that the parties here should only be communicating via counsel. Todd Frank and Joe Carrero have been in regular communication for a number of months regarding commercial matters pertaining to Metal Partners, leading up to the settlement, and I expect they will need to stay in close contact regarding implementation.
>
> 2.    As you may know Traxys has discovered a shortfall of approximately 2,400 bundles of rebar stock belonging to Traxys that were to be held at MPR's New Castle facility as of December 31, 2019, having an approximate sale value of $2.2 million.  Notice of this shortfall was provided to MPR and Intermetals orally following discovery on January 30[th], and then in writing on February 5th (see attached).  Metal Partners has failed to provide any explanation as to the whereabouts of this missing stock, and Traxys reserves all of its rights against Metal Partners.

3.      In connection with the missing stock, Traxys has filed a claim on its insurance. The insurance adjuster will require access to the New Castle facility, its records and personnel, in order to investigate the loss, and we expect to receive the full cooperation of both of your clients as may be requested. This is one reason that Todd Frank will continue to need to communicate with both Joe Carrero and Frank Bergren.

4.      Based on our call yesterday, we are presently unclear as to whether the settlement entered into on January 17th will be honored by your clients. We reserve our rights to enforce the settlement in accordance with its terms.

5.      Until the settlement is implemented, we reserve our rights under the joint venture arrangement, and in particular we expect Metal Partners to safeguard all inventory and funds belonging to Traxys, and not to take any action in respect of Traxys' property without the approval of Traxys.

6.      As you have indicated your clients may not honor the settlement, we have no choice but to protect our interests in all events. Moreover the settlement contemplates that the transactions were to have become effective promptly, with all receivables and subsequent funds to be paid directly to Traxys, which clearly has not occurred, with the consequence that customer funds belonging to Traxys continue to be wrongfully diverted to bank accounts of Metal Partners.

7.      We accordingly reserve the right to notify all customers who have been issued invoices in the name of Traxys to pay all funds directly to Traxys's designated bank accounts, and not the accounts of Metal Partners, and to advise those customers that any payments other than to Traxys's accounts will not discharge their invoices and will result in their being liable to pay the invoices a second time.

8.      Finally, we hereby demand that all customer funds – i.e., all funds received by Metal Partners to date from customers pursuant to invoices issued in the name of Traxys for Traxys's inventory – be immediately turned over to Traxys.

9.      We reserve all rights, whether in contract, tort, or otherwise.

To be clear, we hope that these matters can be amicably and consensually settled and will work with you toward that end.

76.     Traxys received no response to this email.

77.     Traxys continued its efforts thereafter to consummate the settlement transaction, including on February 14th providing to Intermetal's, Carrero's and Metal Partners' respective counsel Traxys's calculations of the sums due under the Settlement Agreement for the inventory

purchase, customer funds, and net receivables along with supporting documentation, and thereafter providing certain additional information requested by counsel for Carrero and Intermetal.

78.     At this date, none of Carrero, MPR, BGD or Intermetal has responded to the draft settlement documents or signed and returned the settlement documents to Traxys.

79.     Carrero, MPR, BGD and Intermetal have failed and refused to perform their obligations under the Settlement Agreement, including, among others, their obligation to act in good faith in the negotiation and preparation of the settlement documentation.

80.     Instead, Carrero, MPR, BGD and Intermetal, directly or via counsel, repeatedly sought to attack the validity of the Settlement Agreement and at the same time have sought to negotiate an amendment of its terms.  Traxys, without prejudice, has engaged in discussions with Carrero, MPR, BGD and Intermetal concerning their proposed amendments to the Settlement Agreement, but no agreement has been reached.

**Events Subsequent to the Joint Venture Settlement Agreement**

81.     On information and belief, since the date of the Settlement Agreement, January 17, 2020, Metal Partners has continued to direct or permit Customer Funds to be paid directly to bank accounts of Metal Partners or its affiliates at Chase.

82.     On information and belief, since January 17, 2020, in excess of $3.2 million of Customer Funds belonging to Traxys have been deposited in bank accounts of Metal Partners or its affiliates at Chase.

83.     Despite due demand, Metal Partners has failed and refused to turn over to Traxys the Customer Funds paid by third party customers for the purchase of the Traxys Inventory.

84.     Despite due demand, Chase has failed and refused to turn over to Traxys the Customer Funds received in bank accounts of Metal Partners or its affiliates that were paid for the purchase of the Traxys Inventory.

85.     On information and belief, since February 2020, Metal Partners has sold, and is continuing to sell, Traxys Inventory to customers under purchase contracts and/or invoices issued in Metal Partners' or its affiliate's name, with instructions for the customers to pay the invoiced amounts directly to dedicated bank accounts of Metal Partners or its affiliates at Chase, instead of Traxys's bank accounts.

86.     On January 30, 2020, a physical count of the inventory at MPR's New Castle, Delaware fabrication facility was conducted by Traxys and attended by representatives of Chase, Metal Partners and Intermetal.  The physical count disclosed that approximately 2,133 bundles, equivalent to 3,098.89 metric tons of rebar raw material, that was expected to be stored at MPR's New Castle was not present, having an approximate value of $2.5 million.  Despite due demand, Metal Partners has failed to identify the location or whereabouts of this missing rebar raw material.

87.     As a result of this missing rebar raw material inventory, Traxys has filed a police report as well as a claim for the loss with its insurance carrier.  Despite due demand, Metal Partners has refused to provide physical access to its facility or the relevant books and records to the insurer's investigator, or otherwise to cooperate with the investigation of Traxys's claim.

88.     On or about February 6, 2020, Metal Partners discontinued Traxys's access to the Soule ERP system and subsequently has failed to provide Traxys access to books and records or other information concerning the business activities conducted under the JVA.

89.     On February 13, 2020, Traxys emailed counsel for MPR, BGD, Intermetal and Carrero requesting that Traxys's access to the Soule ERP software system be restored.

90.     MPR, BGD, Intermetal and Carrero have failed to restore Traxys's full access to the Soule ERP software system.

91.     As a consequence of Metal Partners' denial of access to the Soule system Traxys has been deprived of information concerning the joint venture operations, including but not limited to the sale of the Traxys Inventory, the invoicing of such sales, and receipt of customer payments for the sales of its property.

92.     As a further consequence of Metal Partners' denial of access to the Soule ERP software system, Traxys has been unable to timely file certain tax returns thus subjecting Traxys to interest and penalties.

93.     On February 17, 2020, counsel for Traxys sent a letter to counsel for MPR, BGD, Intermetal and Carrero demanding:

> a.     that Traxys's access to the Soule ERP software system be immediately restored;
>
> b.     that all Customer Funds paid be immediately turned over to Traxys; and
>
> c.     that they cooperate in the investigation being conducted by Traxys's insurer concerning the Traxys Inventory that is missing from MPR's New Castle, Delaware plant.

94.     Other than a term sheet proposing an amended settlement on terms wholly unacceptable to Traxys, neither Traxys nor its counsel has received any response to the demands set out in this notice.

95.     On February 25, 2020, Traxys's counsel wrote again to counsel for MPR, BGD, Intermetal and Carrero demanding that MPR, BGD, Intermetal and Carrero:

a. immediately cease and desist from selling any Traxys Inventory without the approval of Traxys;

b. that they immediately instruct any purchaser of the Traxys Inventory to remit all payments to Traxys's bank account; and

c. that by not later than February 28, 2020, they remit to Traxys all funds collected into the bank accounts of Metal Partners or its affiliates at Chase on account of sales of the Traxys Inventory to Traxys's bank account, details of which accompanied the letter.

96. Neither Traxys nor its counsel have received a response to the letter.

97. By letter dated February 28, 2020, Traxys notified Carrero, MPR, BGD and Intermetal of its election, in accordance with the terms of the Settlement Agreement, to waive all of the conditions precedent and to declare that the Settlement Agreement would operate as the definitive settlement agreement.

98. Traxys has received no response to this letter.

99. By letter dated February 28, 2020, Traxys notified BGD of its default under the BGD Loan Agreement.

100. Traxys has received no response to its February 28, 2020 notice letter to BGD.

101. By letter dated February 28, 2020, Traxys notified Chase of Traxys's rights to the customer funds deposited into MPR's or BGD's bank accounts at Chase and demanded that Chase turn over such funds to Traxys.

102. Traxys has received no response to the February 28, 2020 demand letter to Chase.

103. On March 11, 2020, Traxys sent a letter to MPR and BGD demanding the return of the Traxys Inventory, or that the Traxys Inventory be made available for Traxys to retrieve, as well

as an accounting of all inventory received or sold since December 31, 2019 and that MPR and BGD cease and desist from any further sale or disposition of the Traxys Inventory.

104.    Traxys has received no response to the March 11, 2020 letter.

**FIRST CAUSE OF ACTION**
**(Breach of Contract as against MPR, BGD Intermetal and Carrero)**

105.    Paragraphs 1-104 are incorporated in this First Cause of Action as if set forth fully herein.

106.    Plaintiff and MPR, BGD, Intermetal and Carrero, for valuable consideration, entered into a valid and enforceable Settlement Agreement dated January 17, 2020.

107.    The failure and refusal by Intermetal to purchase the 12/31 Inventory and the Post-12/31 Inventory under the Settlement Agreement constitutes a breach of contract.

108.    The failure and continuing refusal by MPR to cause the turnover of Customer Funds and pay the net receivable due to Traxys under the Settlement Agreement constitutes a breach of contract.

109.    The failure and continuing refusal by Carrero to pay, or cause Intermetal to pay, for the 12/31 Inventory and the Post-12/31 Inventory under the Settlement Agreement constitutes a breach of contract.

110.    The failure and continuing refusal by Carrero to pay, or cause MPR to pay, the Customer Funds and net receivable due to Traxys under the Settlement Agreement constitutes a breach of contract.

111.    The failure and continuing refusal by MPR, BGD, Intermetal to perform their obligations under the Settlement Agreement constitutes a breach of contract.

112.    By reason of the foregoing, Traxys has been damaged in an amount exceeding $75,000 and which is presently estimated at not less than $21,634,453 plus interest thereon at the

New York statutory rate of 9% per annum pursuant to New York Civil Practice Law and Rules Articles 50-51.

## SECOND CAUSE OF ACTION
### (Breach of Contract as against MPR and BGD)

113.   Paragraphs 1-104 are incorporated in this Second Cause of Action as if set forth fully herein.

114.   This Second Cause of Action is asserted in the alternative to the First Cause of Action.

115.   MPR and BGD's sale of the Traxys Inventory under their own names in violation of the express terms of the JVA constitutes a breach of contract.

116.   MPR and BGD's failure to turn over the proceeds of the sale of Traxys Inventory including but not limited to Customer Funds to Traxys in violation of the express terms of the JVA constitutes a further breach of contract.

117.   MPR and BGD's failure to maintain safely and account for the missing 3098.89 metric tons of rebar raw material expected to be stored at MPR's New Castle plant and to cooperate with the investigation of such loss in violation of the JVA is a further breach of contract.

118.   MPR and BGD's failure to provide Traxys with financial and accounting data concerning the joint venture operations in violation of the JVA is a further breach of contract.

119.   MPR and BGD's failure to account for the profits or losses on the sale (without Traxys' consent) of the Traxys Inventory and to pay over Traxys's share of the profits to Traxys or to reimburse Traxys for MPR's or BGD's share of the losses incurred by Traxys in violation of the JVA is a further breach of contract.

120.   By reason of the foregoing, Traxys has been damaged in an amount exceeding $75,000 and which is presently estimated at not less than the amount of not less than $10,754,353

plus interest thereon at the New York statutory rate of 9% per annum pursuant to New York Civil

Practice Law and Rules Articles 50-51.

## THIRD CAUSE OF ACTION
### (Breach of Contract as Against ADR)

121.    Paragraphs 1-54 are incorporated in this Third Cause of Action as if set forth fully

herein.

122.    This Third Cause of Action is asserted in the alternative to the First Cause of Action.

123.    Plaintiff and ADR, for valuable consideration, entered into a valid and binding

contract referred to herein as the Assignment of Accounts Receivables.

124.    In breach of its obligations under the Assignment of Accounts Receivables,

Defendant ADR failed to require and ensure that its customers paid such receivables to Traxys.

125.    Upon information and belief, payments by ADR's customers have been received

by ADR into its bank account(s) at Defendant Chase.

126.    As a consequence of Defendant ADR's breach of its obligations under the

Assignment of Accounts Receivables, Traxys has suffered damages exceeding $75,000 and which

is presently estimated in the sum of not less than $4,830,748.18, plus statutory interest thereon at

the rate of 9% per annum pursuant to New York Civil Practice Law and Rules Articles 50-51.

## FOURTH CAUSE OF ACTION
### (Breach of Contract as against BGD)

127.    Paragraphs 1-104 are incorporated in this Fourth Cause of Action as if set forth

fully herein.

128.    This Fourth Cause of Action is asserted in the alternative to the First Cause of

Action.

129.    Plaintiff and BGD, for valuable consideration, entered into a valid and binding contract in the form of a term loan referred to herein as the BGD Loan Agreement.

130.    BGD has failed to pay the monthly installments, plus interest, on the BGD Loan Agreement for the purchase of equipment at the BGD North Las Vegas plant.

131.    BGD's failure to pay the monthly installments, plus interest, on the BGD Loan Agreement constitutes a breach of contract.

132.    By reason of the foregoing, Traxys has been damaged in an amount exceeding $75,000 and which is presently estimated in the amount of $425,545, inclusive of accrued interest through February 29, 2020, plus interest thereon at the New York statutory rate of 9% per annum pursuant to New York Civil Practice Law and Rules Articles 50-51.

**FIFTH CAUSE OF ACTION**
**(Conversion as against MPR, BGD, Intermetal and Carrero)**

133.    Paragraphs 1-104 are incorporated in this Fifth Cause of Action as if set forth fully herein.

134.    This Fifth Cause of Action is asserted in the alternative to the First through Fourth Causes of Action.

135.    Traxys is the legal owner of the Traxys Inventory.

136.    Defendants MPR, BGD, Intermetal and Carrero have willfully and without lawful justification exercised an unauthorized dominion over the Traxys Inventory, without Traxys's consent, and to the exclusion of Traxys's rights by selling the Traxys Inventory to customers and invoicing for such inventory directly in the name of Metal Partners or its affiliates and/or retaining the proceeds thereof including but not limited to Customer Funds paid for the purchase of Traxys Inventory in the bank accounts of Metal Partners or its affiliates.

137.    By reason of the foregoing, Traxys has been damaged in an amount exceeding $75,000 plus statutory interest thereon at the rate of 9% per annum pursuant to New York Civil Practice Law and Rules Articles 50-51.

## SIXTH CAUSE OF ACTION
### (Conversion as against MPR, BGD, Intermetal, Carrero and Chase)

138.    Paragraphs 1-104 are incorporated in this Sixth Cause of Action as if set forth fully herein.

139.    This Sixth Cause of Action is asserted in the alternative to the First through Fourth Causes of Action.

140.    Traxys is the legal owner of the proceeds of the sale of Traxys Inventory including but not limited to Customer Funds.

141.    Defendants MPR, BGD, Intermetal, Carrero and Chase have willfully and without lawful justification exercised an unauthorized dominion over Traxys's property, without Traxys's consent, to the exclusion of Traxys's rights by failing to turn over the proceeds of the Traxys Inventory including but not limited to the Customer Funds to Traxys.

142.    By reason of the foregoing, Traxys has been damaged in an amount exceeding $75,000 and which is presently estimated at not less than $8,864,000 plus statutory interest thereon at the rate of 9% per annum pursuant to New York Civil Practice Law and Rules Articles 50-51.

## SEVENTH CAUSE OF ACTION
### (Conversion and Breach of Bailment as against MPR)

143.    Paragraphs 1-104 are incorporated in this Seventh Cause of Action as if set forth fully herein.

144.    This Seventh Cause of Action is asserted in the alternative to the First through Fourth Causes of Action.

145.    In connection with the joint venture, Traxys delivered to MPR at its New Castle, Delaware fabrication facility rebar raw material to be held for sale to MPR and/or customers of the joint venture.

146.    Traxys, as bailor, delivered the rebar raw material to MPR, as bailee, and thereby created a bailment.

147.    MPR held and maintained custody of such rebar raw material at its premises as bailee and/or consignee of Traxys.

148.    On January 30, 2020, a physical count of the rebar raw material at MPR's New Castle facility disclosed that 2,133 bundles, equivalent to 3,098.89 metric tons of rebar raw material, was not present, having a cost of $2,519,682.

149.    In violation of its obligations as bailee and/or consignee of Traxys, Defendant MPR failed to properly and adequately care for, supervise, and preserve the rebar raw material, and has also failed to account for the missing rebar raw material delivered by Traxys to MPR.

150.    Alternatively, Defendant MPR has exercised an unauthorized dominion over the rebar raw material to the exclusion of Traxys's rights by removing and/or misappropriating the rebar raw material resulting in the 2,133 missing bundles.

151.    As a consequence of MPR's breach of bailment, or alternatively its conversion of the rebar raw material, Traxys has suffered damages exceeding $75,000 and which is presently estimated in the sum of not less than $2,519,682 plus statutory interest thereon at the rate of 9% per annum pursuant to New York Civil Practice Law and Rules Articles 50-51.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment as to MPR, BGD, Intermetal and Carrero)

152.    Paragraphs 1-104, are incorporated in this Eighth Cause of Action as if set forth fully herein.

153.     This Eighth Cause of Action is asserted in the alternative to the First through Fourth Causes of Action.

154.     Each of by MPR, BGD, Intermetal and Carrero would be unjustly enriched if permitted to retain the Traxys Inventory, accounts receivables relating thereto, or proceeds thereof including but not limited to the Customer Funds or any of the benefits accruing therefrom.

155.     The retention or use for its benefit of the Traxys Inventory, accounts receivables relating thereto, or proceeds thereof including but not limited to the Customer Funds by MPR, BGD, Intermetal and Carrero is at Plaintiff Traxys's expense.

156.     It is against equity and good conscience to permit MPR, BGD, Intermetal and Carrero to retain or use for their benefit the Traxys Inventory, accounts receivables relating thereto, or proceeds thereof including but not limited to the Customer Funds.

157.     By reason of the foregoing, Traxys has been damaged in an amount presently estimated in the sum of not less than $20,000,000, plus interest thereon at the New York statutory rate of 9% per annum pursuant to New York Civil Practice Law and Rules Articles 50-51.

## NINTH CAUSE OF ACTION
### (Unjust Enrichment as to Chase)

158.     Paragraphs 1-104, are incorporated in this Ninth Cause of Action as if set forth fully herein.

159.     This Ninth Cause of Action is asserted in the alternative to the First through Fourth Causes of Action.

160.     Chase would be unjustly enriched if permitted to retain the Customer Funds or any of the benefits accruing therefrom.

161.     The retention of the Customer Funds by Chase is at Plaintiff Traxys's expense.

162.    It is against equity and good conscience to permit Chase to retain the Customer Funds.

163.    By reason of the foregoing, Traxys has been damaged in an amount presently estimated in the sum of $8,864,000, plus interest thereon at the New York statutory rate of 9% per annum pursuant to New York Civil Practice Law and Rules Articles 50-51.

**TENTH CAUSE OF ACTION**
**(Constructive Trust)**

164.    Paragraphs 1-163 are incorporated in this Tenth Cause of Action as if set forth fully herein.

165.    This Tenth Cause of Action is asserted in the alternative to the First through Fourth Causes of Action.

166.    Defendants MPR, BGD, Intermetal and Carrero each owed a fiduciary obligation to Plaintiff Traxys concerning Traxys's property consisting of the Traxys Inventory, accounts receivables relating thereto, and proceeds thereof including but not limited to the Customer Funds.

167.    Defendant Chase owed a fiduciary obligation to Plaintiff Traxys concerning the Customer Funds deposited into accounts at Chase for the dedicated purposes of receiving payments on the sale of the Traxys Inventory.

168.    Through no fault of its own Plaintiff Traxys has been wrongfully deprived of its property in the form of the Traxys Inventory, accounts receivables relating thereto, and proceeds thereof including but not limited to the Customer Funds.

169.    By reason of their retention of Plaintiff Traxys's property consisting of the Traxys Inventory, accounts receivables relating thereto, and the proceeds thereof including but not limited to Customer Funds to which the Defendants MPR, BGD, Intermetal, Carrero and Chase have no

legal or equitable right, claim or interest therein, each of MPR, BGD, Intermetal, Carrero and/or Chase have been unjustly enriched.

170.    The Traxys Inventory, accounts receivables relating thereto, and proceeds thereof including but not limited to the Customer Funds must be held by each of MPR, BGD, Intermetal, Carrero and Chase as involuntary trustees holding said property and profits therefrom in constructive trust for Plaintiff Traxys with the duty to immediately convey the same to Plaintiff Traxys.

## ELEVENTH CAUSE OF ACTION
### (Accounting as to MPR, BGD, Intermetal and Carrero)

171.    Paragraphs 1-163 are incorporated in this Eleventh Cause of Action as if set forth fully herein.

172.    Defendants MPR, BGD, Intermetal and Carrero breached their fiduciary duties in connection with their duties for financial responsibility to Traxys under the JVA.

173.    Defendants MPR, BGD, Intermetal and Carrero were entrusted with money, budgeting and accounting for the joint venture and are subject to the burden of accounting in connection with the JVA's business, operations, revenues, profits and expenses.

174.    Plaintiff Traxys is entitled to an accounting from Defendants MPR, BGD, Intermetal and Carrero concerning the Traxys Inventory, the Customer Funds and the joint venture business, operations, revenues, profits and expenses.

175.    Plaintiff Traxys has no adequate remedy at law.

## TWELFTH CAUSE OF ACTION
### (Injunction)

176.    Paragraphs 1-163 are incorporated in this Twelfth Cause of Action as if set forth fully herein.

177.    Defendants MPR, BGD, Intermetal and Carrero have breached the Settlement Agreement and are continuing to breach the Settlement Agreement.

178.    Defendants MPR and BGD have breached the JVA and are continuing to breach the JVA.

179.    Defendants MPR, BGD, Intermetal and Carrero have converted and are continuing to convert the Traxys Inventory owned by Traxys.

180.    Defendants MPR, BGD, Intermetal, Carrero and Chase have converted and are continuing to convert the proceeds of the Traxys Inventory including but not limited to the Customer Funds owned by Traxys.

181.    Because the Defendants MPR and BGD are, on information and belief, in default on their trade finance obligations owed to Chase and are considering a restructuring of their operations and may be in the zone of insolvency, their disposal of the Traxys Inventory and/or the accounts receivable relating thereto or proceeds thereof including but not limited to the Customer Funds may render ineffectual a judgment obtained by Traxys in this action.

182.    Traxys is likely to succeed on the merits of its claims.

183.    Injunctive relief must be granted in order to preserve the status quo and prevent the Defendants from continuing their breaches and disposing of the Traxys Inventory and/or the accounts receivable relating thereto or proceeds thereof including but not limited to the Customer Funds that are the subject matter of this action.

184.    Absent injunctive relief, the Traxys Inventory and/or the accounts receivable relating thereto or proceeds thereof including but not limited to the Customer Funds may be lost and Plaintiff Traxys will suffer irreparable harm.

185.    Traxys requests an order enjoining the Defendants from removing, moving, selling or otherwise disposing of or diverting the Traxys Inventory and/or the accounts receivable relating thereto or proceeds thereof including but not limited to the Customer Funds.

186.    Traxys requests an order directing the Defendants to provide an accounting of all Customer Funds received by the Defendants or any of them.

187.    Traxys requests an order directing that any Customer Funds received by the Defendants or any of them be immediately turned over to Traxys.

188.    Traxys requests an order directing Defendants MPR, BGD and Carrero to immediately grant Traxys full access to the Soule ERP software system and to provide all other books and records regarding the joint venture activity and disposition of the Traxys Inventory, accounts receivables relating thereto and proceeds thereof including Customer Funds.

189.    Traxys requests an order directing Defendants MPR and Carrero to immediately grant access to the New Castle plant to facilitate the insurance investigation on the claim for missing rebar raw material inventory.

190.    Traxys requests an order directing Defendants MPR, BGD and Carrero to immediately disclose all books and records concerning the raw material rebar inventory held by Metal Partners at any location, including at the North Las Vegas and the New Castle plants.

191.    Plaintiff Traxys has no adequate remedy at law.

192.    Traxys has commenced an ancillary replevin action in the District Court, Clark County, Nevada against BGD and MPR seeking a permanent writ of possession and surrender of the Traxys Inventory in Las Vegas, Nevada.

193.    Traxys has commenced an ancillary replevin action in the Superior Court of the State of Delaware against MPR seeking delivery of the Traxys Inventory in New Castle, Delaware.

**WHEREFORE**, Plaintiff Traxys respectfully requests this Court enter judgment as follows:

A.      On the First Cause of Action damages in the principal sum of $21,634,453;

B.      On the Second Cause of Action damages in the principal sum of not less than $10,754,353;

C.      On the Third Cause of Action damages in the principal sum of not less than $4,830,748.18;

D.      On the Fourth Cause of Action damages in the principal sum of not less than $425,545;

E.      On the Fifth Cause of Action damages in the principal sum of not less than $75,000;

F.      On the Sixth Cause of Action damages in the principal sum of not less than $8,864,000;

G.      On the Seventh Cause of Action damages in the principal sum of not less than $2,519,682;

H.      On the Eighth Cause of Action damages in the principal sum of not less than $20,000,000;

I.      On the Ninth Cause of Action damages in the principal sum of not less than $8,864,000;

J.      On the Tenth Cause of Action a constructive trust be imposed on all of the Traxys Inventory, accounts receivables relating thereto, and the proceeds thereof including but not limited to the Customer Funds;

K.      On the Eleventh Cause of Action an accounting;

L.      On the Twelfth Cause of Action an injunction:

    i.  barring Defendants from removing, moving, selling or otherwise disposing of the Traxys Inventory, the accounts receivable relating thereto or proceeds thereof including but not limited to the Customer Funds;

    ii.  directing the Defendants to provide an accounting of all proceeds of the sale of Traxys Inventory or Post-1/1 Inventory including but not limited to Customer Funds received by the Defendant;

    iii.  directing Defendants to immediately turn over all proceeds of the sale of Traxys Inventory including but not limited to Customer Funds to Traxys;

    iv.  directing Defendants MPR, BGD and Carrero to immediately grant Traxys full access to the Soule ERP software system and to provide all other books and records regarding the joint venture activity and disposition of the Traxys Inventory and proceeds thereof including but not limited to Customer Funds;

    v.  directing the Defendants MPR and Carrero to immediately grant access to the New Castle plant to facilitate the insurance investigation on the claim for missing rebar raw material inventory; and

    vi.  directing the Defendants MPR, BGD and Carrero to immediately disclose all books and records concerning the raw material rebar inventory held by Metal Partners at any location, including at the North Las Vegas and the New Castle plant.

M.    Pre-judgment interest and post-judgment interest on the causes of action One through Seven at the rate of 9% per annum pursuant to New York Civil Practice Law and Rules Articles 50-51;

N.    Reasonable attorney's fees, costs, and disbursements; and

O.    Such other relief the Court finds just and proper under the facts and circumstances.

Dated: April 13, 2020

TRAXYS NORTH AMERICA LLC

By:_____
    Patrick F. Lennon, Esq.
    Kevin J. Lennon, Esq.
    LENNON, MURPHY & PHILLIPS, LLC
    The GrayBar Building
    420 Lexington Ave., Ste. 300
    New York, NY 10170
    Tel. (212) 490-6050
    Fax (212) 490-6070
    pfl@lmplaw.net
    kjl@lmplaw.net

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 13, 2020, he caused a copy of **First Amended Complaint** to be served via the Court's Electronic Filing System.

_____

Patrick F. Lennon